**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 9, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

LARRY EUGENE PIRPICH, JR.,

Defendant – Appellant.

No. 14-7015
(D.C. No. 6:12-CR-00095-JHP-1)
(E.D. Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **ANDERSON**, and **MURPHY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant and Appellant, Larry Eugene Pirpich, Jr., pled guilty to one count of conspiracy to manufacture methamphetamine and multiple counts of interstate travel in aid of racketeering enterprises. Arguing that the district court

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

abused its discretion in denying his motion to withdraw his guilty plea, Mr. Pirpich seeks to have his sentence vacated and the matter remanded to permit him to withdraw that guilty plea. For the following reasons, we affirm Mr. Pirpich's conviction and sentence.

## BACKGROUND

From approximately January 2010 to July 2012, Mr. Pirpich and his wife, Shila Ann Parker, conspired to possess and distribute pseudoephedrine, for the purpose of manufacturing methamphetamine. They did this in the following manner: Federal law prohibits an individual from purchasing more than nine grams of pseudoephedrine in a thirty-day period. Pharmacies require the presentation of a photo identification for all pseudoephedrine purchases. All such purchases are logged in an electronic database which is available to state and federal law enforcement.

Mr. Pirpich and Ms. Parker attempted to circumvent the tracking database and buy pseudoephedrine in excess of the legal limits. They did this by various methods, including the presentation of government-issued identification cards from various states, the purchase of pseudoephedrine from different pharmacies in the same city on the same date, and the utilization of associates to purchase pseudoephedrine for them. They also occasionally traveled to pharmacies in other parts of Oklahoma, Texas, Colorado and elsewhere. They were eventually detained and arrested by law enforcement authorities in Oklahoma.

On March 1, 2013, Mr. Pirpich pled guilty to all counts pursuant to a written plea agreement. The plea agreement contained the following provisions: the maximum possible sentence for the drug conspiracy count was "imprisonment for a period of not more than 20 years . . ." and the maximum sentence for each count of traveling in aid of racketeering was "imprisonment for a period of not more than 5 years . . ." Plea Agreement at 2; R. Vol. I at 95. The agreement also included a stipulation regarding a pre-existing Texas state conviction against Mr. Pirpich:

> Pursuant to [United States Sentencing Commission, Guidelines Manual ("USSG")] § 5G1.3, the parties agree that a reasonable punishment for the instant offense is a sentence imposed concurrently with an undischarged term of imprisonment in Grayson County, State of Texas, Case No. 061522. Further, the parties agree that a reasonable punishment would result from applying credit for time already served in the Defendant's incarceration in Case No. 061522 to the instant offense.

Id. at 11; R. Vol. I at 104 (emphasis added).

The agreement further included provisions acknowledging Mr. Pirpich's understanding of the plea and the plea agreement, as well as his satisfaction with the services of his attorney:

> The defendant has been represented by counsel and is fully satisfied with the services rendered by the defense attorney(s) and agrees that such representation has been competent legal representation and has provided the best result for the defendant possible under the circumstances of his case. The defendant expressly acknowledges that counsel has explained Defendant's trial, sentencing, appellate and post-conviction rights; that defendant understands these rights;

and that defendant knowingly and voluntarily waives and relinquishes those rights as set forth above.

Id. at 7-8; R. Vol. I at 100-01.

> I have read this agreement and carefully reviewed every part of it with my attorney. I fully understand it and voluntarily agree to it without reservation. No promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this plea agreement. I am satisfied with the legal services provided by my attorney in connection with this plea agreement and matters related to it. I do this of my own free will. No threats have been made to me, nor am I under the influence of anything that could impede my ability to fully understand this plea agreement.

Id. at 13; R. Vol. I at 106.

The plea agreement also contained a sentence stating that, "[i]f the Court imposes a sentence with which the defendant is dissatisfied, the defendant will not be permitted to withdraw any guilty plea for that reason alone." Id. at 8; R. Vol. I at 101. It further included a waiver of appellate and post-conviction rights, including the right to collaterally attack the conviction and sentence "except for claims based on ineffective assistance of counsel which challenge the validity of the guilty plea or this waiver." Id. at 7; R. Vol. I at 100.

The district court scheduled Mr. Pirpich for sentencing on September 6, 2013. At that sentencing hearing, Mr. Pirpich's defense counsel, Robert Ridenour, advised the court that he and Mr. Pirpich were having "irreconcilable differences with regard to our understanding of certain aspects of the sentencing process and the sentence to be imposed today." Tr. of Sent. Hr'g at 4; R. Vol. II

at 78. Mr. Ridenour accordingly asked the court to appoint new counsel for Mr. Pirpich. The court permitted Mr. Ridenour to withdraw as counsel, and ordered new defense counsel to file a motion regarding the nature of the disagreement between Mr. Ridenour and Mr. Pirpich.

Some three months later, on December 12, 2013, Mr. Pirpich's new defense counsel, Roger Hilfiger, filed a motion to withdraw Mr. Pirpich's guilty plea and rescind the plea agreement. In the motion, Mr. Pirpich claimed that Mr. Ridenour had misinformed him as to the amount of credit he would receive for his Texas state sentence against his federal sentence. Attached to the motion as "Exhibit A" was a piece of paper from a legal pad with handwritten computations of the Guideline sentencing computation, purportedly written by former counsel, Mr. Ridenour. Mr. Pirpich also claimed that, since none of the counts against him were dismissed and since he did not get a reduction in his sentence calculation for acceptance of responsibility, he "did not receive any benefit from the agreement" in exchange for his "waiv[er] [of] all his rights." Mot. to Withdraw Plea/Plea Agreement at 3; R. Vol. I at 110.[1]

The district court held an evidentiary hearing on December 13, 2013, at which both Mr. Ridenour and Mr. Pirpich testified. Mr. Pirpich testified that,

---

[1]Mr. Pirpich makes no argument on appeal about the denial of any further sentence reduction for acceptance of responsibility, or the dismissal of counts. His appellate argument is solely directed to the calculation of credit for his Texas sentence against his federal sentence.

when Mr. Ridenour met with him in February 2012 to discuss a plea, Mr. Pirpich asked Mr. Ridenour to write down the terms. Mr. Pirpich claimed that he understood that the particular piece of paper with Mr. Ridenour's written terms (Ex. A) was his actual plea agreement. He further stated that he understood that his likely federal sentencing range would be 168 to 188 months, and that his entire Texas sentence of nine years (108 months) would be deducted from his federal sentence. Based upon this understanding, Mr. Pirpich claimed he hoped his federal sentence would be sixty months. Mr. Pirpich's attorney specifically stated that he was "not saying that Mr. Ridenour was ineffective[;] . . . we're not making that allegation." Tr. of Hr'g at 11; R. Vol. II at 21.

Mr. Pirpich admitted that Ex. A was not signed by him, by Mr. Ridenour or by the Assistant United States Attorney. He further admitted that he had heard, at his change of plea hearing, an estimate of his sentencing range as being from 188 to 235 months, but he did not, at that time, mention to the court Ex. A, with its handwritten calculation of a substantially lower sentence. He also indicated his understanding that the district court would determine his sentence and that the court was not bound by the plea agreement. Mr. Pirpich further recognized that the presentence report ("PSR") prepared by the United States Probation Office did not reflect the full reduction in his sentence (based on his Texas sentence) Mr. Pirpich believed he was getting.

Despite all these admissions, Mr. Pirpich further testified that he relied on Ex. A – the handwritten note – and did not realize until just minutes before the sentencing hearing that he would only get credit for the twenty-two months he had actually served in Texas. Additionally, Mr. Pirpich did not claim that Mr. Ridenour had advised him incorrectly; rather, he stated that he "didn't understand him correctly." Tr. of Hr'g at 20; R. Vol. II at 30. Mr. Pirpich admitted that Mr. Ridenour thoroughly went over the written plea agreement with him before they both signed it. He further acknowledged that the written plea agreement did not include an agreement that he would receive a sixty-month sentence, and he understood that "ultimately it's up to this Court to determine what [his] sentence is." Id. at 28; R. Vol. II at 38.

Ultimately, Mr. Pirpich indicated that he needed a little time to consider his options, but that even if he were allowed to rescind his plea agreement, he would probably plead guilty anyway. He also indicated that, had he proceeded to trial and been found guilty, his sentence would likely have been 240 months.

Mr. Ridenour also testified at the December 13 hearing. While he could not recall the specifics of his meetings with Mr. Pirpich, he testified that his usual practice was to go through the plea agreement with his clients. He stated that he did not "see at any time where [he] would have communicated . . . to Mr. Pirpich [that his sentence would be sixty months]." Id. at 53; R. Vol. II at 63. He further stated that he could not "envision [him]self telling [Mr. Pirpich] he would get

-7-

credit for a sentence he has not even served." Id. at 58; R. Vol. II at 68. Indeed, he testified that the stipulation in the plea agreement meant that "he'd [Mr. Pirpich would] get credit for the time that he had served on the state sentence." Id. at 52; R. Vol. II at 62 (emphasis added). Mr. Ridenour finally testified that, with respect to Ex. A, a reasonable interpretation was that he (Mr. Ridenour) was communicating to Mr. Pirpich that he might serve 108 months in state prison, and would be left thereafter with serving sixty more months in federal prison, based on the state and federal sentences running concurrently.

Before it concluded the hearing, the court informed the parties that it would give them an opportunity to submit additional briefs on the matter before the court ruled. Mr. Pirpich's brief reiterated his argument that Mr. Ridenour had miscalculated his sentence and the application of USSG § 5G1.3: "Defendant was led to believe that USSG § 5G1.3 would apply to the total sentence received of nine years (108 months) from the State of Texas, and this would be deducted as a credit to his federal sentences which was calculated as 210 months under the guidelines." Br. in Support of Mot. to Withdraw at 2-3; R. Vol. I at 115-16. In response, the government's brief addressed the seven factors set forth in United States v. Gordon, 4 F.3d 1567 (10th Cir. 1993), to determine whether a defendant has met his burden of showing a fair and just reason for being allowed to withdraw a prior guilty plea.

The court then issued an order denying Mr. Pirpich's motion to withdraw his guilty plea and rescind the plea agreement. It ruled as follows:

> Fed. R. Crim. Proc. 11(d)(2)(B) provides that after a plea is accepted but before sentencing a defendant may withdraw his plea if he can show a "fair and just reason" for requesting the withdrawal. The burden to show a fair and just reason is on the Defendant and seven factors have been identified by the Tenth Circuit in determining whether a defendant has met this burden. United States v. Gordon, 4 F.3d 1567, 1572 (10th Cir. 1993). Those factors are: (1) whether the defendant has asserted his innocence; (2) prejudice to the government; (3) delay in filing defendant's motion; (4) inconvenience to the court; (5) defendant's assistance of counsel; (6) whether the plea is knowing and voluntary; and (7) waste of judicial resources. Id.
>
> After consideration of the testimony presented at the motion hearing on December 13, 2013, argument of counsel, and review of the briefs filed in support and in opposition to the motion, the Court finds the Defendant has failed to meet his burden of proof that a fair and just reason exists to allow him to withdraw his guilty plea. Specifically, and with regard to factors identified in United States v. Gordon,: (1) the Defendant has not asserted his innocence in this matter; (2) the Government asserts, and the Court agrees, that the Government would suffer prejudice if the Defendant's motion were granted; (3) previous counsel provided competent representation; and (4) after considering the plea colloquy, the Court finds the Defendant's plea was knowing and voluntary.

Order at 1-2; R. Vol. I at 130-31. The court observed that, although Mr. Pirpich claimed that his prior counsel promised a sixty-month sentence, his counsel refuted that claim at the motions hearing. Moreover, "the Court also notes that, 'a miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel.'" Id. at 2 (quoting United States v. Estrada, 849 F.2d 1304, 1307

(10th Cir. 1988)).[2]  The court then denied Mr. Pirpich's motions to rescind his plea agreement and to withdraw his guilty plea.

The court subsequently sentenced Mr. Pirpich to 188 months' imprisonment on Count One (conspiracy) and sixty months each on Counts Two through Eleven (interstate travel), to be served concurrently with each other and with the sentence Mr. Pirpich was currently serving in Texas.  The court also imposed three years of supervised release, ordered Mr. Pirpich to pay a total of $1,100 in special assessments, and ordered him to forfeit $3,000.  This appeal followed.

## DISCUSSION

We begin by noting that Mr. Pirpich's plea agreement contained a waiver of all direct appeals as well as the "right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel which challenge the validity of the guilty plea or this waiver."  Plea Agreement at 7; R. Vol. I at 100.  Mr. Pirpich's claims arguably fall within the stated exception to the appellate waiver.  Moreover, the government does not urge us to enforce the appellate waiver.  "A defendant's waiver of the right to appeal may itself be waived by the government."  United States v. Contreras-Ramos, 457 F.3d 1144, 1145 (10th Cir. 2006); see also United States v. Clark, 415 F.3d 1234, 1238 n.1 (10th Cir. 2005) (deciding to refuse to

---

[2]The above quotation actually first appeared in United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993).  It has been quoted numerous times since then.

-10-

enforce a defendant's waiver of the right to appeal because the government "neither filed a motion to enforce [the defendant's] plea agreement, nor argued in its brief that we should dismiss [the defendant's] appeal on the basis of her appellate rights waiver"). We therefore proceed to the merits of Mr. Pirpich's argument.

Mr. Pirpich argues the district court abused its discretion when it denied his motion to withdraw his guilty plea.[3] As the district court noted, a defendant may withdraw a guilty plea before sentencing if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). We have identified seven factors which guide a court's decision whether to grant such withdrawal:

> (1) whether the defendant has asserted his innocence, (2) prejudice to the government, (3) delay in filing defendant's motion, (4) inconvenience to the court, (5) defendant's assistance of counsel, (6) whether the plea is knowing and voluntary, and (7) waste of judicial resources.

Sanchez-Leon, 764 F.3d at 1258 (quoting United States v. Hamilton, 510 F.3d 1209, 1214 (10th Cir. 2007)). "We have also 'suggested an additional factor to

---

[3]Both parties agree that we review the district court's decision for an abuse of discretion. United States v. Sanchez-Leon, 764 F.3d 1248, 1259 (10th Cir. 2014) ("Whether to permit withdrawal 'always and ultimately lies within the sound discretion of the district court to determine on a case by case basis when the standard is and isn't met.'" (quoting United States v. Soto, 660 F.3d 1264, 1267 (10th Cir. 2011) (further quotation omitted))). "Our review of a district court's denial of a motion to withdraw a guilty plea is for abuse of discretion." Id. (further quotation omitted).

consider: the likelihood of conviction.'" Id. (quoting United States v. Carr, 80 F.3d 413, 421 n.5 (10th Cir. 1996)).

We have further stated that, "[i]f the defendant fails to carry his or her burden on asserted innocence, validity of the plea (whether it was given knowingly and voluntarily), and ineffective assistance of counsel, the court need not address 'the remaining factors . . . because these [remaining] factors speak to the potential burden on the government and the court, rather than the defendant's *reason* for withdrawal.'" Id. (quoting Hamilton, 510 F.3d at 1217).

In this case, Mr. Pirpich does not assert his innocence. Indeed, he conceded that, if he is permitted to withdraw his guilty plea, he would likely plead guilty again rather than face trial. His argument about the plea agreement seems to encompass both the validity of his plea and the effectiveness of his counsel, in that he argues that, based on his attorney's incorrect advice when he signed the plea agreement, he misunderstood the interplay between his state and federal sentences and the impact of his state sentence on his federal sentence. Thus, we address this issue as involving both Gordon factors.

"When a defendant's challenge to a guilty plea is based on ineffective assistance of counsel, we apply the two-part test established in Strickland v. Washington, 466 U.S. 668, 687 (1984)." Hamilton, 510 F.3d at 1216; see also Hill v. Lockhart, 474 U.S. 52, 58 (1985). To prevail under that standard, Mr. Pirpich must show both that his counsel's performance was deficient and that this

deficiency prejudiced his defense. Hamilton, 510 F.3d at 1216. We have stated that, to show prejudice, Mr. Pirpich "'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Id. (quoting United States v. Carr, 80 F.3d 413, 418 (10th Cir. 1996)). As indicated, Mr. Pirpich himself has admitted that, had he been permitted to withdraw his guilty plea, he would most likely have pled guilty again, rather than proceed to trial.

Furthermore, Mr. Ridenour, an experienced criminal defense attorney, testified that he did not promise Mr. Pirpich a sixty-month sentence. And, even had he made such a promise, "[a] miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance arising to the level of ineffective assistance of counsel." United States v. Parker, 720 F.3d 781, 787 n.9 (10th Cir. 2013) (quoting United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993)); see also United States v. Gigley, 213 F.3d 509, 517 n.3 (10th Cir. 2000). We thus conclude that Mr. Pirpich has demonstrated neither deficient performance nor prejudice.

It is also clear that Mr. Pirpich's plea, and his entry into the plea agreement, was knowing and voluntary. The district court concluded as much: "after considering the plea colloquy, the Court finds the Defendant's plea was knowing and voluntary." Order at 2; R. Vol. I at 131. Nothing in the record or in

-13-

Mr. Pirpich's brief convinces us that the district court's finding and conclusion are wrong.

In sum, Mr. Pirpich has failed to carry his burden of demonstrating that there existed a fair and just reason for him to withdraw his guilty plea and the plea agreement. The district court carefully considered his argument, applying the appropriate legal standard to the facts and record. Mr. Pirpich has utterly failed to show that the district court abused its discretion in denying his request to rescind his plea agreement and withdraw his guilty plea.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order denying Mr. Pirpich's request to rescind his plea agreement and withdraw his guilty plea. We further AFFIRM his conviction and sentence.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

-14-